UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARLE ESDELLE,

    Plaintiff,

v.

SEARS ROEBUCK AND COMPANY and
SEARS LOGISTICS SERVICES, INC.,

    Defendants.

No. 02 c 7692
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. Background

On October 31, 2001, Defendant Sears Logistics Services, Inc. ("SLS") terminated Plaintiff Earle Esdelle, as part of a Reduction in Force ("RIF"). Plaintiff then sued SLS and Sears Roebuck and Company, ("Sears") alleging he was discriminated against because of his race, African American, in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Esdelle alleges that he failed to receive a promotion to Senior Manager of Floor Ready Services in January 2001 and was terminated on October 31, 2001 because of his race.[1]

### II. Analysis

I consider here Defendants' motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). In determining whether

---

[1] Esdelle does not allege any discriminatory acts that took place on or before September 20, 1999.

any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States,* 180 F.3d 859, 861 (7th Cir. 1999).

### A. Defendant Sears

Defendants originally argued that Sears was an improper defendant to Esdelle's failure to promote and discriminatory discharge claims. However, as Defendants now recognize, the position forming the basis of Esdelle's failure to promote claim was a Sears position, making them a proper party to this suit. (See Defs.' Resp. Pls.' Stmt. Add. Facts ¶ 47).

### B. Failure to Promote

On January 29, 2001, Esdelle applied for the position of Senior Manager of Floor Ready Services responsible for providing apparel packaging products that meet the apparel business's needs. Sharon Bringelson, who formerly held the position, and her former supervisor, Ken Tackett, were responsible for selecting a candidate to fill the position. Together, Bringelson and Tackett prepared an interview matrix listing seven key characteristics they considered important for the position. Tackett then assigned weights for each characteristic based on its relative importance to the position. In particular, Tackett was looking for a candidate with an understanding of the buying and sourcing process, experience with packaging, and knowledge concerning the flow of merchandise through the supply chain. Tackett and Bringelson interviewed three candidates, including Esdelle. After the interviews, they totaled the scores for each candidate and selected the candidate with the highest score, Ingrid Drouin.

2

Defendants argue that Esdelle cannot succeed on his failure to promote claim because he cannot establish his *prima facie* case and because he cannot establish the stated non-discriminatory reason for his termination was pretextual. In the absence of direct evidence of race discrimination, as is the case here, the plaintiff must establish a *prima facie* case for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To establish a *prima facie* case in a failure to promote claim, the plaintiff must show that he is a member of a protected class, he applied and was qualified for the position sought, he was rejected for the position, and those that were promoted had similar or lesser qualifications. *Brill v. Lante Corp.,* 119 F.3d 1266, 1270 (7th Cir. 1997).

Defendants argue that Esdelle cannot establish his *prima facie* case because he has failed to show that he was equally or more qualified than Drouin. Although Esdelle and Drouin each had twenty years worth of experience with Defendants, Drouin received a higher interview score from both Tackett and Bringelson. Tackett stated that he preferred Drouin because she had more recent experience as a buyer and understood changes that had occurred in Defendants' buying processes and because she had recent experience as a line planner, giving her a better understanding of the flow of goods across the company's supply chain.

The evaluation matrix prepared by Tackett and Bringelson shows that Esdelle and Drouin received roughly comparable scores (no more than one point of difference) in each of the categories with Drouin scoring slightly higher in attitude, communication skills, problem solving skills, understanding of the buying and import processes, and relationship building. Because Esdelle and Drouin have similar experience – they had twenty years of work experience and each had buying experience during that time – and because they received similar scores during the

3

interview process, I find that Esdelle has established a genuine issue of fact as to whether he was equally qualified for the position.

Once the plaintiff makes out his *prima facie* case, the burden shifts to the defendant to present a legitimate, non-discriminatory basis for the adverse action. *Cowan v. Glenbrook Sec. Servs.,* 123 F.3d 438, 445 (7th Cir. 1997); *Miller v. American Family Mut. Ins. Co.,* 203 F.3d 997, 1007 (7th Cir. 2000). If the defendant is able to do so, the burden shifts back to the plaintiff to establish that the proffered reason is merely a pretext for discrimination. *Cowan,* 123 F.3d at 445; *Miller,* 203 F.3d at 1007. A plaintiff may establish that the defendant's proffered reason for termination was pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Mechnig*, 864 F.2d at 1364 (quoting *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Where the plaintiff in a promotional denial case relies upon a gap in credentials between himself and the successful candidate, the gap must be so substantial that it "slap[s] you in the face." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1179 (7th Cir. 2002); *See also Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004).

Defendants assert that Drouin was hired because she had more recent buying experience, better knowledge of the supply chain, a slightly better attitude, and better relationship building skills. Since all of these are legitimate, non-discriminatory reasons for hiring Drouin, Esdelle must establish these reasons were pretextual to survive summary judgment. To do this, Esdelle asserts that Tackett and Bringelson purposefully underrated his skills when they filled out their respective evaluation matrices. First, Esdelle claims that he had more buying experience than

4

Drouin because he had been a buyer for twice as long and because he had experience in apparel construction, which he felt was vital to the job. Defendants state, however, that while Drouin's experience was shorter in duration, it was more valuable, as it had been during a time in which the buying processes were changed to their current state. Additionally, Defendants assert that Drouin, and not just Esdelle, had experience in apparel construction.

Esdelle also claims that Bringelson manipulated the evaluation scores by giving Drouin an unwarrantedly high score in relationship building. Bringelson claims she gave Drouin a higher score because, in her experience, Drouin had been better at building working relationships. Esdelle claims that Bringelson could not have thought this to be true since Drouin had received a score of "2" in this area from her previous supervisor. However, Esdelle does not provide any evidence that Bringelson knew of or agreed with the previous supervisor's assessment. Moreover, Esdelle does not present any evidence that he had a reputation among his co-workers for relationship building or that he had received a higher evaluation.

All in all, Esdelle has shown only that he and Drouin had similar qualifications. Those similar qualifications are borne out in the evaluation matrix scores. In all cases, Esdelle's and Drouin's scores are equal or vary only by one point. Esdelle has not presented sufficient evidence to show that there existed the kind of significant/ shocking gap required to establish pretext.[2]

---

[2] *See Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 561 (7th Cir. 2004) (It is not the Court's role to revisit legitimate business decisions); *Kuhn v. Ball State Univ.,* 78 F.3d 330, 332 (7th Cir. 1996) ("Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter.")

**C. Wrongful Termination**

Esdelle began working for Defendants on June 10, 1974 in sales. Since that time, he has received various promotions, including a March 1996 promotion to Product Quality Manager for Footwear reporting to Jack Howlett, Director of Product Quality Assurance. In August 1999, Defendants underwent a RIF and Esdelle, along with other employees, was laid-off. However, approximately five months later, Esdelle applied and was re-hired by Howlett for the position of Product Quality Manager of Footwear, the same position he held prior to the earlier layoff. On August 31, 2001, Defendants again underwent a RIF, and Esdelle was terminated. At that time, there were two employees performing the function of Senior Manager of Quality– Esdelle and Elaine O'Connell. Howlett states that he used an individual assessment tool to evaluate Esdelle and O'Connell in which each employee was rated on 10 leadership ability elements and 4 technical skills and results elements. Also indicated in the assessment were the employees' previous two performance evaluation scores. O'Connell's performance evaluation score for 2000 and mid-year 2001 were both 7; Esdelle's performance evaluation score for 2000 and mid-year 2001 were 6 and 4 respectively. Howlett claims that he decided to keep O'Connell because she received higher evaluation scores.

Defendants argue that Esdelle cannot prevail on his wrongful termination claim because he cannot establish his *prima facie* and because he cannot establish that the legitimate, non-discriminatory reasons given for his termination were pretextual. To establish a *prima facie* case of race discrimination in a RIF, the plaintiff must establish that he was in a protected class, he was meeting his employer's legitimate expectations, despite his performance, he was terminated,

6

and his employer sought a replacement for him. *Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 982-3 (7th Cir. 1999) (citations omitted).

First, Defendants argue that Plaintiff cannot establish that he was meeting his employer's legitimate expectations because his mid-year 2001 performance review rating of 4 indicated he was meeting only some of Defendants' expectations. Be that as it may, a poor mid-year evaluation does not conclusively establish Esdelle failed to meet his employer's legitimate expectations, especially in light of an above average rating for the preceding year. Since a reasonable jury could conclude, from his previous evaluations, that Esdelle was meeting Defendants' expectations, I find that he has established that part of his *prima facie* case.

Second, Defendants argue that Esdelle cannot establish that they sought to or did replace him. In response, Esdelle claims that another employee, Drouin, joined Howlett's group after he was terminated. Esdelle's references to Drouin are at best vague. Esdelle neither alleges nor presents evidence that Drouin took over work formerly assigned to him or overflow work from O'Connell.

Esdelle also argues that, based on *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1398 (7th Cir. 1997), he need not show he was replaced by another employee. With respect to the holding in *Wallace,* Esdelle's argument is somewhat misplaced. In *Wallace*, the Court found that plaintiff did not have to show he was replaced in cases where the plaintiff could show that his work was distributed among other employees whose responsibilities were further distributed to new employees. *Id.* Esdelle has not made such a showing here and, thus, is not relieved of establishing that he was replaced. Accordingly, I find that Esdelle cannot establish his *prima facie* case for wrongful termination.

Finally, Defendants argue that even if Esdelle could establish his *prima facie* case, his claim would fail because he cannot establish their legitimate, non-discriminatory reason for his termination was pretextual. Howlett claims he chose to terminate Esdelle over O'Connell, the other Product Quality Manager, because he received lower 2000 and 2001 mid-year performance evaluations. Esdelle asserts that Howlett gave him lower scores than he deserved to make him more vulnerable to the anticipated 2001 layoffs. As evidence, Esdelle argues that Howlett knew about the upcoming layoffs before giving him a score of 4 on his 2001 mid-year evaluation. Assuming this is true, it still does not account for the lower evaluation score Esdelle received in 2000. In order to explain the lower 2000 evaluation, Esdelle claims that Howlett generally gave him lower scores than he deserved because of his race. Esdelle does not present any evidence, besides his own opinion, to show that he deserved higher evaluation scores. Even assuming Esdelle's opinion is objective evidence of his abilities, it still does not shed light on whether Howlett was untruthful in his assessment. *See Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 398-99 (7th Cir. 1998); *Olsen v. Marshall & Ilsley Corp.,* 267 F.3d 597, 602 (7th Cir. 2001). Without proof of a lie, no inference of discriminatory motive can be drawn. *Bell v. EPA,* 232 F.3d 546, 550 (7th Cir. 2000).

To establish a discriminatory motive, Esdelle asserts that a disproportionate number of African Americans in Howlett's group were laid-off. Of the four employees laid-off by Howlett, two were African American, Esdelle and Clarence Overton. While this might be slightly high statistically speaking, what force it has is dissipated by the fact that Howlett was the person who

hired Esdelle for the position of Product Quality Manager in 1996.³ *EEOC v. Our Lady of the Resurrection,* 77 F.3d 145, 151 (7th Cir. 1996). Because Esdelle has not presented sufficient evidence to establish Defendants' reason for his termination was untruthful, I find that he cannot establish pretext.

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 18, 2005

---

³ After hiring Esdelle in 1996, Howlett laid him off in 1999 and then re-hired him for the same position in 2000.